### EARLL v. METROPOLITAN ST. RY. CO.

(Circuit Court, S. D. New York. February 19, 1898.)

PATENTS—INVENTION BY EMPLOYE—LICENSE.

An agreement, by one employed by a cable-railway company to devise a gripping mechanism, that he would assign to it the right, to use the invention when patented, is an agreement for a license to use on the line then owned or in course of construction by the company, as determined by its existing franchise, and not for an unlimited use on lines of other companies, control of which is subsequently acquired by purchase, consolidation, etc.

This was a bill in equity by Charles I. Earll against the Metropolitan Street-Railway Company for alleged infringement of a patent for a grip mechanism for cable railways.

James G. Chapin and Esek Cowen, for plaintiff.
Frederic H. Betts and Samuel B. Clarke, for defendant.

WHEELER, District Judge. This bill alleges in usual form infringement by the defendant of patent No. 520,259, dated May 22, 1894, and granted to the plaintiff for grip mechanism for cable railways. The cause has now been heard upon evidence taken upon a traverse of a plea, which alleges: That the defendant is a street-surface railroad corporation owning an extensive system of street-surface railroads in the city of New York, including cable roads, "between the South Ferry and the Bowling Green on Battery Place,. State street, and Whitehall street; between Bowling Green and Central Park at the intersection of Seventh avenue with Fifty-Ninth street, on Broadway, Fourteenth street, Union Square West, and Seventh avenue; between the intersection of Seventh avenue with Fifty-Third street and the intersection of Columbus avenue with One Hundred and Tenth street, on Fifty-Third street, Ninth avenue, and Columbus avenue; between the intersection of Broadway with Twenty-Third street and Lexington avenue at the Harlem river, on Twenty-Third street and Lexington avenue," on which three separate lines of cars are run, "one called the 'Central Park Line,' between the intersection of Seventh avenue with Fifty-Ninth street and the South Ferry; another, called the 'Lexington Avenue Line,' between Lexington avenue at or near the Harlem river and the South Ferry; and the third, called the 'Columbus Avenue Line,' between the intersection of Columbus avenue with One Hundred and Tenth street and.

the South Ferry." That the operation of the Central Park Line began in June, 1893, of the Columbus Avenue Line in December, 1894, and of the Lexington Avenue Line in October, 1895. That the plan or policy of constructing and operating these cable railroads was formed and entered upon prior to 1891 by the Houston, West St. & Pavonia Ferry Railroad Company, the stockholders of which had, as a body, acquired in 1889 the capital stock of the South Ferry Railroad Company; and which had by lease itself acquired in 1890 the Broadway and Seventh Avenue Railroad, with rights of the Broadway Surface Railroad and of the South Ferry Railroad; and which by lease itself acquired in 1892 the Ninth Avenue Railroad and extensions, and by leave of local authorities the right to construct and operate cable railroads in Fifty-Third street, and in a part of Lexington avenue; and which, in 1893, by lease itself acquired the Twenty-Third Street Railroad; and which by agreement afterwards, in 1893, became consolidated with the Broadway Railway Company and the South Ferry Railroad Company into one corporation by the name of the Metropolitan Street-Railway Company, the stockholders of which, in 1894, acquired the capital stock of the Columbus & Ninth Avenue Railroad Company, and which was consolidated with the Lexington Avenue and Pavonia Ferry Railroad Company, by the name again of the Metropolitan Street-Railway Company, which was, in 1895, consolidated with the Columbus & Ninth Avenue Railroad Company by the name still again of the Metropolitan Street-Railway Company, which is the defendant. That "at the inception of the cable traction scheme aforesaid it was apparent to said Houston Company that special and peculiar difficulties would be encountered owing to the crowded condition of the streets of New York City, by which as complete control as possible of moving cars was necessitated, and owing also to the great traffic requiring for its accommodation large numbers of cars to be constantly in operation, succeeding each other after very short intervals of time. All known grip mechanisms were more or less unsuited to the conditions, and it was, therefore, a matter of great importance to the success of said Houston Company's plans for it to obtain an improved and more perfect grip mechanism for controlling the movement of the cars. To that end, in January, 1891, the said Houston Company assigned the plaintiff (who was then in its paid employment as a draftsman) to the duty of devising an improved grip mechanism. Such duty was accepted by the plaintiff under his existing employment, and he thereupon entered upon the discharge thereof, and continued in the performance thereof, doing little, if any, other work, during the greater part of the year 1891 and the early portion of 1892; and under his said employment in or about May, 1892, he made and delivered to said Houston Company the plans and working drawings of the grip mechanisms hereinbefore mentioned. During the process of experimenting upon and perfecting said grip mechanism said Houston Company, expecting and intending (as plaintiff had good reason to know) to use the results of plaintiff's work in its business, furnished to him, and the plaintiff accepted, the following assistance, namely: It relieved him almost entirely from other work. It gave him the fullest opportun-

ity to become acquainted with the conditions of the problem. It afforded him means to acquaint himself in the minutest detail with the state of the art as at that time developed. It paid his expenses on expeditions which he made to various parts of the United States for the purpose of studying existing grip mechanisms in use. It supplied him with materials, and afforded him the assistance of other workmen; and it paid him wages, which, at his request, were increased when it appeared that he had succeeded in devising an effective grip mechanism." That "the grip mechanisms by which the motion of the cars used on said three lines is controlled are the grip mechanisms which this defendant is alleged in the bill of complaint to be making and using, and which are alleged in the bill of complaint to contain the alleged patented improvements and inventions described and claimed in said letters patent numbered 520,259; and they all substantially conform to the plans and working drawings devised, made, and delivered by the plaintiff as hereinafter set forth." "Wherefore defendant claims the right as against the plaintiff to use in its business in the city of New York grip mechanism constructed, or to be constructed, in accordance with the plans and working drawings delivered to said Houston Company by the plaintiff as aforesaid, and avers that the plaintiff in conscience and equity is estopped to assert against this defendant the exclusive rights purporting to be granted by the letters patent mentioned in the bill of complaint."

The issue so joined by this plea and traverse is whether the plaintiff so made this invention while in the employ of the Houston Company, one of the predecessors of the defendant, in this right, that the Houston Company acquired, and defendant has succeeded to, a right to use the invention as the defendant now has used it. Under such circumstances, if no express agreement should be made, a general right for the employer to use would be implied; if an express agreement should be made as a part of the course of the employment, the terms of that agreement would control. In this case there was an express agreement; and the principal question is one of fact as to what employer it was made with, and how far it extended. The plaintiff is a civil engineer, and was employed, directed, and paid by one McNulty, who was consulting engineer in charge of the cable construction then going on, which was that of the Broadway Line. McNulty procured the plaintiff to come from Wisconsin to this employment by letter headed "Broadway Cable Construction," without other designation of corporation or road in the heading or body of the letter. He began in January, 1891, while the Broadway Cable Line was being constructed on the Broadway & Seventh Avenue Line and Lower Broadway to Battery Park. He left in June, 1894. The understanding was had during the forepart of the employment, while the invention was being completed; the application for the patent was dated and signed May 31, and filed June 12, 1893. On March 16, 1894, while the application for the patent was pending, McNulty, at the request of the plaintiff to confirm in writing the agreement, wrote to the plaintiff:

"The agreement was as follows: For any device designed or worked out by yourself of sufficient novelty to be patentable a patent was to be procured in

your name at the expense of the railroad company, and an assignment on your part to the railroad company of the right to use such patent or patents without payment of any royalty or other costs apart from the expense of obtaining the patent or patents as mentioned above."

The plaintiff does not dispute this, but differs somewhat from McNulty as to what constituted "the railroad company," yet not very much. McNulty, in his cross-examination, says, in substance, that the Broadway cable road was understood; the plaintiff insists that it was the Broadway & Seventh Avenue Railroad. It would naturally refer to the cable road then being built, in the construction of which they were then employed, without very strict regard to distinct corporate rights, about which they might not exactly know. The funds of McNulty came from a person who was president of the Houston Company, and vice president of the Broadway & Seventh Avenue Company; and whether he knew by which, is doubtful. They seem to have actually originated, however, from the Houston Company. Neither of these companies had then acquired from the South Ferry Company any right to build and operate a cable road, or any but a horse railroad, below Battery Park. On the whole, as they made the agreement, they seem fairly to have intended, and mutually to have understood, that the right to use the invention would belong to the railroad company then building the cable road on the Broadway & Seventh Avenue Line, and down Broadway to Battery Park, as it was then being built; and that the right to use it should not extend to any other road. The railroad company intended was either the Houston or the Broadway & Seventh Avenue, and. if the Houston, it was not understood by the plaintiff, and probably not by McNulty, to include more than had been acquired through the Broadway & Seventh Avenue Company. To that extent only did their minds meet. All these railroad companies' were bound by strict limits as to the extent of their respective roads, and a license to a company as such would not extend without the limits of that company to other roads afterwards acquired from other corporations, or by new extensions; and could, by the terms of the agreement, be confined to less road even than the company acquiring it had a right to. The defendant was not in existence at the time of the license, and its rights under the license must be such only as it has wholly acquired by succession from those who took by the license in the first place. A point has been made that, if the license did not cover the whole use of the invention free, it did with compensation, which cannot be tried here; and that, therefore, the issue of license or no license must be found for the defendant. The only license appearing, however, is a free license, and the extent of that is what was to be proved by the defendant in support of the plea; and, when proved, it would be like a territorial license, the infringement within being free, and that without a trespass. As the plaintiff's employment was wholly through the authority of McNulty, this agreement, which was within that of the employment, was within that authority, whatever corporation may have been the principal. And as the license is pleaded to the whole charge of infringement, and is found to cover much less, the issue joined upon the plea must be in part found for the defendant, and to that

extent the plea be sustained, and in part for the plaintiff, and to that extent the plea be overruled. Plea sustained as to Broadway & Seventh Avenue Line to Battery Park, and overruled as to residue.